1
2
3
4
5
6
7
8               IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ELBERT JEFFERY,                    No. Civ. S-05-2306 RRB EFB

12         Plaintiff,              Memorandum of Opinion
                                         and Order
13      v.

14  YELLOW TRANSPORTATION, INC. DBA
    YELLOW FREIGHT and DOES 1
15  through 20, inclusive,

16         Defendants.          /

17

18      Elbert Jeffery ("Jeffery") brought an action against his

19  former employer Yellow Transportation, Inc. ("Yellow") alleging

20  racial discrimination, harassment and retaliation in violation

21  of 42 U.S.C. § 1981.  Yellow now moves for summary judgment on

22  the grounds that Jeffery's claims are time-barred by the

23  relevant statute of limitations and/or laches.  Alternatively,

24

25  Yellow moves for summary judgment on the grounds that Jeffery

26  cannot establish a prima facie case for racial discrimination,

27

28

harassment, or retaliation under § 1981.  For the reasons stated below, Yellow's motion is DENIED in part and GRANTED in part.[1]

## I. BACKGROUND

In 1985, Jeffery, an African-American, was hired as a dockworker for Yellow.[2]  Pl.'s Separate Statement of Undisputed Material Facts ("UMF") # 2.  In 1992, he was transferred to Yellow's loading dock in Tracy where he worked until he was terminated in January 2002.  Pl.'s UMF #3; Def.'s UMF # 28.  During his employment with Yellow, Jeffery was a member of the International Brotherhood of Teamsters, Local Union No. 439 ("Union").  Pl.'s UMF # 1.  The terms and conditions of Jeffery's employment were governed by the Collective Bargaining Agreement ("CBA") entered into between the Union and Yellow.  Def.'s UMF # 7.  The CBA contains a non-discrimination policy prohibiting unlawful discrimination as well as the procedures to be followed in the event that an employee is terminated,

---

[1]  Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).  As a result, the oral argument presently scheduled for July 25, 2007, at 10:00 a.m., see Minute Order dated May 14, 2007, is hereby **VACATED**.

[2]  Yellow is a provider of motor carrier services throughout North America and abroad.  (Def.'s Separate Statement of Undisputed Material Facts ("UMF") # 1.)

2

including the right of an employee to challenge his termination before a grievance panel.[3] Id. ## 10, 12-13.

On or about March 22, 2000, Jeffery was terminated from Yellow for his role in a physical altercation with a co-worker. Def.'s UMF ## 14-18. Pursuant to the CBA, an automatic grievance was filed and Jeffery was subsequently reinstated. Id. # 21. On or about January 15, 2002, Jeffery was terminated for a second time for his involvement in a physical altercation with a co-worker. Def.'s UMF ## 22-28. Again, an automatic grievance was filed pursuant to the CBA. Id. # 35. On or about March 18, 2002, Jeffery submitted a letter of resignation before the grievance panel made a final determination regarding his employment status. Id. # 37.

In the instant action, Jeffery alleges that he resigned from Yellow in March 2002, rather than challenge his termination, because he could no longer handle the severe and continuous racial and retaliatory harassment he suffered at the hands of a group of predominantly white co-workers, led by Chuck Tyron and Daniel Drake. Pl.'s UMF ## 6, 109 & 111; Def.'s UMF ## 13, 28-29 & 37. Jeffery alleges that such harassment occurred on a daily basis throughout his 10 years of employment at the Tracy facility. Pl.'s UMF # 6. Jeffery further alleges

---

[3] The grievance panel is ultimately responsible for determining whether to uphold an employee's termination. Id. # 13.

that the harassment occurred in the presence of supervisors and managers who acknowledged it but failed to take any action to prevent it.  Id.  In fact, Jeffery contends that his complaints of harassment to management resulted in more severe and retaliatory harassment.  Id.

On November 15, 2005, Jeffery filed the instant action alleging that Yellow violated his civil rights under § 1981. Compl. at 1.  In this action, Jeffery seeks damages against Yellow for its failure to provide a workplace free from unlawful harassment, discrimination and retaliation, and for its failure to take reasonable action to prevent and correct such harassment.  Id. 1-6.

Conversely, Yellow contends that it is not liable for the discrimination, harassment and retaliation alleged by Jeffery because it was unaware of such conduct.  Def.'s UMF ## 74-77. More particularly, Yellow alleges that it was unaware of the alleged harassment because Jeffery never: (1) filed a grievance with the Union alleging harassment in violation of the CBA; (2) reported any incident of harassment to Yellow's human resource department; (3) reported any incident of harassment or retaliation to management; or (4) filed a formal complaint with any state or federal agency, including the Equal Opportunity Commission or the California Department of Fair Employment and Housing.  Def.'s UMF ## 11, 61-62 & 74-76.

## II. DISCUSSION

Jeffery alleges that his former employer Yellow engaged in racial discrimination, harassment and retaliation in violation of § 1981.  These claims are addressed individually below.

A. Legal Standard

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. § 56(c).

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A fact is material if it could affect the outcome of the suit under the governing substantive law.  Id. at 248.  A material fact is "genuine," if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  The burden then shifts to the nonmoving party to establish, beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

"[W]hen the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.

5

The moving party need not disprove the other party's case."
<u>Miller v. Glenn Miller Productions, Inc.</u>, 454 F.3d 975, 987 (9th
Cir. 2006) (citing <u>Celotex</u>, 477 U.S. at 325).   Hence, summary
judgment is properly granted in favor of a defendant where the
plaintiff has failed to sufficiently establish the existence of
an element essential to his or her case, and on which he or she
will bear the burden of proof at trial.   <u>Miller</u>, 454 F.3d at 987
(citing <u>Cleveland v. Policy Management Sys. Corp.</u>, 526 U.S. 795,
805-806 (1999)).

When the moving party meets its burden, the "adverse party
may not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response, by
affidavits or as otherwise provided in this rule, must set forth
specific facts showing that there is a genuine issue for trial.
If the adverse party does not so respond, summary judgment, if
appropriate, shall be entered against the adverse party."
Fed. R. Civ. P. 56(e).

"[I]n ruling on a motion for summary judgment, the
nonmoving party's evidence is to be believed, and all
justifiable inferences are to be drawn in [that party's] favor."
<u>Miller</u>, 454 F.3d at 988 (internal quotation marks omitted)
(citing <u>Hunt</u> v. <u>Cromartie</u>, 526 U.S. 541, 552 (1999)).   "But the
non-moving party must come forward with more than 'the mere
existence of a scintilla of evidence.'"   <u>Miller</u>, 454 F.3d at 988
(quoting <u>Anderson</u>, 477 U.S. at 252).   Thus, "'[w]here the record
taken as a whole could not lead a rational trier of fact to find
for the nonmoving party, there is no genuine issue for trial.'"

1  Miller, 454 F.3d at 988 (quoting Matsushita Elec. Indus. Co.,

2  Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

3  　　Where divergent ultimate inferences may reasonably be drawn

4  from the undisputed facts, summary judgment is improper.

5  Miller, 454 F.3d at 988.

6  　　B.  Statute of Limitations

7  　　Yellow argues that Jeffery's § 1981 claims are time-barred

8  because he failed to demonstrate that an act of racial

9  harassment, discrimination, or retaliation occurred within the

10 statutory period.

11 　　The statute of limitations for a cause of action brought

12 pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act

13 of 1991, is governed by the four-year statute of limitations set

14 forth in 28 U.S.C. § 1658(a), not the personal injury statute of

15 limitations of the forum state.  See Thinket Ink Information

16 Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061

17 (9th Cir. 2004) (citing Jones v. R.R. Donnelley & Sons Co., 541

18 U.S. 369).

19 　　In 1991, Congress amended § 1981 "by adding a new

20 subsection to § 1981 defining the term "'make and enforce

21 contracts'" to include the "termination of contracts, and the

22 enjoyment of all benefits, privileges, terms, and conditions of

23 the contractual relationship."  Jones, 541 U.S. at 373.[4]  The

24 ─────────────────

25 [4] Section 1981(a) generally provides:

26

27 　　　All persons within the jurisdiction of the United
　　　States shall have the same right in every State and
　　　Territory to make and enforce contracts, to sue, be

28 　　　parties, give evidence, and to the full and equal
　　　benefit of all laws and proceedings for the security

United States Supreme Court concluded that a cause of action arising under the amendments to § 1981 is governed by 28 U.S.C. § 1658's "catch-all" four-year statute of limitations because such a "construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time protecting settled interests." <u>Jones</u>, 541 U.S. at 382. The Court reasoned that such a rule is proper because it "spares federal judges and litigants the need to identify the appropriate state statute of limitations to apply to new claims but leaves in place the 'borrowed' limitations periods for pre-existing causes of action, with respect to which the difficult work already has been done." <u>Id.</u>

     In the instant action, Jeffery alleges that Yellow deprived him of the right to be free from discrimination, harassment and retaliation on the basis of race, in violation of his right to make and enforce contracts, including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Compl. at 5. In short, Jeffery alleges that the racial harassment and retaliation he endured at the Tracy facility amounted to a hostile work environment substantially altering the terms and conditions of his employment and impairing his ability to work. Id. The Court concludes that such allegations are sufficient to bring

of persons and property as is enjoyed by white
citizens, and shall be subject to like punishment,
pains, penalties, taxes, licenses, and exactions of
every kind, and to no other.  42 U.S.C. § 1981(a).

8

Jeffery's claim within the amended language of § 1981. <u>See</u> <u>Rivers v. Roadway Exp., Inc.</u>, 511 U.S. 298, 302 (1994) (observing that the 1991 amendments to § 1981 made it clear that racial discrimination in the making and enforcement of contracts applied "to all phases and incidents of the contractual relationship, including discriminatory contract terminations."); <u>Manatt v. Bank of America, NA</u>, 339 F.3d 792, 797 (9th Cir. 2003) (holding that "the congressional amendment to § 1981 evinced congressional intent to permit hostile work environment claims under § 1981. A hostile work environment interferes with the 'enjoyment of all benefits . . . and conditions of the contractual relationship' of employment and is therefore actionable under § 1981.")

Accordingly, because Jeffery's claims were brought pursuant to the 1991 amendment to § 1981, they fall within the four-year statutory period proscribed by 28 U.S.C. § 1658. <u>See</u> <u>Jones</u>, 541 U.S. at 383 (finding that petitioners' hostile work environment, wrongful termination, and failure to transfer claims arose under the 1991 Act because they were made possible by that Act).

Next, the Court turns to whether Jeffery's § 1981 claims arose during the four-year period. In this regard, Yellow argues that Jeffery's claims are time-barred because he failed to proffer evidence demonstrating that an act of racial discrimination, harassment or retaliation occurred within the four years prior to the filing of the complaint on November 15, 2005. The Court disagrees.

Hostile environment claims are different from discrete acts of discrimination or retaliation because they involve repeated

conduct.  <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 115 (2002).[5]   "The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  <u>Id.</u>

"In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  <u>Morgan</u>, 536 U.S. at 116.  "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  <u>Id.</u> at 117.  Thus, so long as an act contributing to the claim occurs within the filing period, a court may consider the entire time period of the hostile environment claim for purposes of determining liability, even if some of the acts of the claim fall outside the statutory time period.  <u>Id.</u>  In this context, "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."  <u>Id.</u> at 120.

---

[5]   While <u>Morgan</u> involved a Title VII hostile work environment claim, the court recognizes that those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action.  <u>Manatt</u>, 339 F.3d at 797.

In the case at bar, Jeffery alleges that he was subjected to a continuous and pervasive pattern of racial harassment, discrimination and retaliation from 1992 until his termination in 2002.  Compl. at 4-5; Pl.'s Supp. Resp. to Def.'s First Set of Interrogatories, Response # 2.  Importantly, while Jeffery has provided an extensive accounting of the harassment and retaliation he allegedly experienced over the course of his employment with Yellow, he only identified one specific act of harassment occurring within the four-year statutory period, i.e., one act of harassment occurring after November 15, 2001.  This act allegedly took place "sometime after Thanksgiving, 2001" and involved a derogatory remark written next to Jeffery's name on a bulletin board in the break room containing the word "nigger."  Id.[6]

Under Morgan, this evidence is sufficient to trigger the continuing violation doctrine and permit the consideration of earlier, otherwise time-barred acts.  See Morgan, 536 U.S. at 122 (a charge alleging a hostile work environment claim is not time-barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period).[7]  Accordingly, in viewing the

---

[6]  See McGinest v. GTE Service Corp., 360 F.3d 1103, 1116 (9th Cir. 2004)("It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination.  This word is 'perhaps the most offensive and inflammatory racial slur in English,. . . . a word expressive of racial hatred and bigotry.'")

[7]  Yellow argues that the averments contained in Jeffery's supplemental responses to its First Set of Interrogatories should be disregarded as sham facts designed to evade the statute of limitations because neither his declaration in an

evidence in the light most favorable to Jeffery, his § 1981 claims are not time-barred because a discriminatory act occurred within the statutory period and that act was part of the same unlawful employment practice giving rise to a single hostile work environment claim relating back to 1992.

C. Laches

Yellow argues that the equitable doctrine of laches operates to bar Jeffery's § 1981 claims because he unreasonably delayed in bringing such claims when he had ample basis to bring them as earlier as 1992. Mot. at 8.

Laches operates to bar a plaintiff from maintaining a action if he or she has unreasonably delayed in filing such action and defendant has suffered harm as a result. Morgan, 536 U.S. at 121.  The defense of laches requires a defendant to prove (1) lack of diligence by the plaintiff, and (2) prejudice to defendant.  Id. at 121-122.  If the elements of latches are established, the trial court has "the discretionary power to locate a just result in the circumstances peculiar to the case."

_____

earlier related case, nor his deposition testimony, specifically mentions any incidents of harassment during his last two months on the job.  See Block v. City of Los Angeles, 253 F.3d 410, 419, n.2 (9th Cir. 2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the fact.") (citation omitted).  This argument is unpersuasive.  Jeffery's later averments simply elaborate on, rather than contradict, his earlier statements. See Scamihorn v. General Truck Drivers, 282 F.3d 1078, 1085, n.7 (9th Cir. 2002) (In response to a motion for summary judgment "'the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition; minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.'").

Id. at 121 (internal quotation marks omitted).[8]   In other words, the establishment of a laches defense does not necessarily mean that a plaintiff's entire action fails.   See Pruitt v City of Chicago, 472 F.3d 925, 929 (7th Cir. 2006) (observing that "[a] less severe consequence would be to carve off the aspects of plaintiffs' claim that are no longer subject to meaningful adversarial testing.")

In the case at bar, Jeffery alleges that he suffered severe and pervasive harassment from 1992 until his termination in 2002.   Pl.'s UMF #6.   This means that, assuming Jeffery is telling the truth, a basis existed for a claim approximately 13 years before the filing of this action.   Jeffery has proffered no legitimate excuse for this delay.   As such, the Court finds Jeffery's delay unreasonable and inexcusable.   See Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 997 (9th Cir. 2006) ("In considering whether a plaintiff's delay was unreasonable, courts consider: (1) the length of the delay, measured from the time the plaintiff knew or should have known about his potential cause of action, and (2) whether the plaintiff's delay was reasonable, including whether the plaintiff has proffered a legitimate excuse for his delay.") Accordingly, this factor militates in favor of establishing the defense of laches.

With respect to prejudice, Yellow argues that it has been prejudiced by Jeffery's delay in the form of fading witness

---

[8] In Morgan, the Supreme Court expressly stated that it would not address questions such as "how-and how much-prejudice must be shown" or "what consequences follow if laches is established." Id. at 121.

memory, the death of one harasser and one witness, and the departure of one harasser and one witness from Yellow's employ. Mot. at 8-9.   While the Court recognizes that Yellow will indeed suffer some prejudice from Jeffery's delay, it does not, however, find as a matter of law that such delay warrants dismissal of the entire action.

Based on the widespread allegations of harassment, the Court finds that the unavailability of two deceased witnesses (one of whom died in 1992) is relatively insignificant, especially since the deceased harasser was allegedly responsible for a single act of harassment and the deceased witness only observed that act of harassment.   Likewise, the Court finds that the departure of two witnesses from Yellow's employ is also relatively insignificant given that there is no evidence to suggest that either witness is unavailable to testify at trial.

For these reasons, the Court concludes that equity is not served by dismissing the entire action under the doctrine of laches.[9]   Dismissal is not appropriate because Yellow has failed to demonstrate that there is no genuine dispute as to whether it has suffered material prejudice from Jeffery's delay.

---

[9]   See Pruitt, 472 F.3d at 929 (observing that the result of dismissing an entire suit "because it is no longer feasible to litigate about the most ancient of the asserted wrongs could be functionally equivalent to giving the employer an easement across Title VII. [Essentially,] [b]y violating the statute for long enough, the employer would acquire a right to continue indefinitely.")   The Court is persuaded that equity does not favor such a result.   Yellow should not be able to escape liability for continuous acts simply because those acts have been ongoing for a substantial period of time.

Nevertheless, due to Jeffery's delay in filing this action, the Court, upon proper briefing, does not foreclose the possibility of carving off the aspects of plaintiff's claims that are no longer subject to meaningful adversarial testing. See Pruitt, 472 F.3d at 929 (suggesting that a less severe approach to outright dismissal of a case following a finding of laches is "to carve off the aspects of the plaintiffs' claim that are no longer subject to meaningful adversarial testing.")

D. Hostile Work Environment

Yellow argues that Jeffery cannot establish a hostile work environment claim because he did not subjectively perceive his workplace to be abusive since he engaged in the same behavior he complains of, i.e., Jeffery regularly used profanity and uttered derogatory remarks.  The Court disagrees.

"In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." McGinest, 360 F.3d at 1112. Moreover, because "'[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed,'" a court runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated when it too readily grants

summary judgment. McGinest, 360 F.3d at 1112 (quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81-82 (1998)).

To establish a prima facie case of hostile work environment under § 1981, plaintiff must raise a triable issue of fact as to whether: (1) he was subjected to verbal or physical conduct because of his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiffs employment and create an abusive working environment. Manatt, 339 F.3d at 798 (quoting Kang v. U. Lim Am., Inc., 296 F.3d 810, 817 (9th Cir. 2002)). Like Title VII, § 1981 is not a general civility code. Manatt, 339 F.3d at 798 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms of conditions of employment.'" Faragher, 524 U.S. at 788 (citation omitted).

In determining if an environment is so hostile to violate § 1981, "[i]t is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.'" McGinest, 360 F.3d at 1113. A plaintiff must show that the work environment was both subjectively and objectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 871-872 (9th Cir. 2001).

In determining whether a work environment is objectively hostile a court considers the following factors: (1) frequency

of discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. <u>McGinest</u>, 360 F.3d at 1113 (citing <u>Nichols</u>, 256 F.3d at 872). The required severity of the conduct varies inversely with the pervasiveness or frequency of the conduct. <u>McGinest</u>, 360 F.3d at 1113. Finally, the objective hostility of a racially hostile work environment must be assessed from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff. <u>Id.</u> at 1115.

In this case, viewing the evidence in the light most favorable to Jeffery, the Court concludes that the acts described by Jeffery, in his virtually un-rebutted declaration and discovery responses, are sufficient to survive a motion for summary judgment.

Jeffery alleges that he suffered severe and pervasive harassment at the hands of co-workers and that his complaints to management of such harassment were to no avail. For instance, Jeffery alleges that, among others, co-worker Tyron regularly used the words "nigger" and "Uncle Tom" as well as called him a "monkey" and "gorilla." Pl.'s Supp. Response to Yellow's First Set of Interrogatories ¶¶ 79 & 106.[10] Jeffery also alleges that he repeatedly discovered derogatory remarks scrawled on the bathroom wall, including, but not limited to, "nigger," "Uncle

---

[10] Jeffery also alleges that co-worker Drake would call him, among other things, "nigger" and "token nigger." See Decl. of Elbert Jeffery ¶¶ 57-63 (submitted in a previous action and incorporated into this action), attached as Exh. 7 to Decl. of Steven W. Moore In Support of Def.'s Mot. for Summary Judgment.

Tom," "Junior that fat ass nigger," "Junior suck ass nigger," "Nigger should die," "nigger snitch," and "Junior's bringing back legalized slavery."  Id. at ¶¶ 84-85.[11]

In addition, Jeffery avers that after he complained about such harassment, various co-workers referred to him as a "suckass, "snitch," "nigger snitch," "Uncle Tom," "Company boy," and accused him of "sucking the [manager's] dick."  Pl.'s Supp. Response to Yellow's First Set of Interrogatories at ¶¶ 79, 88, 104 & 106.  Finally, Jeffery avers that his co-workers engaged in other harassment, including filling his shoes with soda, placing wood blocks under his forklift (to get it stuck), stealing his freight bills and tampering with his food.  Id. at ¶¶ 88-91 & 100.

While the foregoing is not an exhaustive list of the harassment alleged by Jeffery, it is sufficient to create a triable issue as to whether he was subjected to unwelcome, ongoing and continuous race based harassment and retaliatory harassment.[12]  The Court finds that the alleged harassment would

---

[11]  Jeffery further alleges that he discovered a stick figure drawing in the bathroom of a person hanging from a gallows with the words, "Junior, Ha, Ha," written next to it.  See Decl. of Elbert Jeffery ¶ 27.

[12]  See Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000) (holding that a hostile work environment may be the basis for a retaliation claim under Title VII).  In Ray, the court held that a genuine issue of fact existed as to whether a plaintiff was subject to a hostile work environment (based on retaliation) where he was subject to regular verbal abuse from his supervisors after complaining about the treatment of women.  Id. at 1245-1246.  Here, as in Ray, Jeffery's allegations of retaliatory harassment by co-workers following his complaints to management are sufficient to create a genuine issue of fact as to whether Jeffery was subject to a hostile work environment.

be sufficient to alter the terms and conditions of Jeffery's employment. Accordingly, the Court concludes that Jeffery has proffered sufficient evidence to create a genuine issue of fact regarding whether the Tracy facility was a hostile work environment.

However, notwithstanding the finding of a hostile work environment, Jeffery cannot survive summary judgment unless he establishes a genuine issue of fact regarding whether Yellow knew of the harassment but failed to take remedial measures reasonably calculated to end it. See McGinest, 360 F.3d at 1119-1120 (while employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known, they may avoid liability for known harassment "by undertaking remedial measures 'reasonably calculated to end the harassment.'")

In the instant case, Jeffery avers that he repeatedly went to manager Scott Birch's office and complained about racial and retaliatory harassment that he was subjected to at the hands of his fellow co-workers. Pl.'s Supp. Response to Yellow's First Set of Interrogatories ¶ 79. Jeffery further avers that not only did Birch refuse to take any remedial action but that he encouraged such harassment by making a joke about it. Id. at ¶ 80. Finally, Jeffery avers that, on numerous occasions, he informed various managers, and showed at least one, the derogatory and retaliatory remarks written on the bathroom walls. Id. at ¶¶ 84-85 & 87.

Based on the foregoing, the Court concludes that Jeffery has proffered sufficient evidence to establish a genuine issue of fact regarding whether Yellow had actual knowledge of the harassment of which Jeffery informed various supervisors and/or managers, including the derogatory comments by co-workers Drake and Tyron. Additionally, the Court concludes that Jeffery has proffered sufficient evidence to establish a genuine issue of fact as to whether Yellow had actual or imputed knowledge of the incidents of racist graffiti because Jeffery not only allegedly informed various managers of the graffiti but the managers used the restrooms where the graffiti was prevalent.

Accordingly, because Yellow failed to proffer any evidence of remedial measures taken to end the harassment (i.e., warnings or discipline), except for painting over the graffiti in the bathrooms, Jeffery has established a genuine issue of fact as to whether Yellow's remedial measures were adequate given the reoccurrence of the graffiti and the alleged pervasiveness of the harassment.

For these reasons, the Court concludes that summary judgment is not appropriate with respect to Jeffery's hostile work environment claim.

E.   Disparate Treatment & Retaliation

Yellow argues that Jeffery cannot recover under § 1981 on either a disparate treatment theory or a retaliation theory arising out of its decision to terminate him. The Court concludes that to the extent the complaint seeks to assert such claims, they are not viable because, even assuming that Jeffery could make a prima facie showing that he is entitled to relief

under either theory, Yellow has articulated a legitimate non-discriminatory reason for Jeffery's termination.  See Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1188 (9th Cir. 2006) (if an employee meets the elements of a prima facie case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action);[13] see also Yartzof v. Thomas, 809 F.2d 1371, 1377 (9th Cir. 1987) (if the defendant satisfactorily articulates a legitimate, non-retaliatory reason for an adverse employment action, the burden shifts back to the plaintiff to show that the alleged explanation is a pretext for impermissible retaliation.  The plaintiff can meet its burden "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'")

Accordingly, because Yellow proffered a legitimate non-discriminatory reason for terminating Jeffery; and because Jeffery failed to create a genuine issue of fact by asserting that Yellow's reasons for terminating him were pretextual (i.e., Jeffery failed to show that a discriminatory reason more likely motivated Yellow's decision to terminate him, or that Yellow's explanation for Jeffery's termination is unworthy of credence) Jeffery cannot state a viable disparate treatment or retaliation claim with respect to his termination.  Indeed, it is undisputed

---

[13]  See Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654, 658–659 (9th Cir. 2002) (observing that the familiar burden-shifting scheme that applies in a retaliation claim also applies in a racial discrimination claim).

that Jeffery was terminated for physically assaulting a co-worker.

    F.  Constructive Termination

Yellow argues that Jeffery's constructive termination claim cannot survive summary judgment because Jeffery has failed to cite any authority supporting the proposition that a claim for constructive termination is viable when an employee resigns following his termination.  The Court disagrees.

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.'"  Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000).  "A constructive discharge occurs when, looking at the totality of circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'"  Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir. 1987).  The determination as to whether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact.  Id.

In the case at bar, it is undisputed that Jeffery was terminated on January 18, 2002 for physically assaulting a co-worker.  It is further undisputed that his termination triggered the grievance procedures set forth in the CBA.  Finally, it is undisputed that Jeffery submitted a letter of resignation

(because he could no longer tolerate the harassment) on March 18, 2002, halting the grievance procedures before a final determination was rendered.   Therefore, because the grievance procedure had not run its course prior to Jeffery's resignation, it cannot be considered meaningless since it was possible that Jeffery could be reinstated by the grievance panel.

Viewing the evidence most favorably to Jeffery, the Court concludes that Jeffery has sufficiently alleged a continuous pattern of discriminatory treatment to constitute the necessary aggravating factors such that a trier of fact could (but not necessarily would) conclude that a reasonable person would find the conditions so intolerable and discriminatory as to justify resigning.   See Watson, 823 F.2d at 361-362.   Put another way, Jeffery's allegations create a genuine issue of fact as to whether he was constructively terminated to preclude dismissal of this claim at the summary judgment stage.

### III. CONCLUSION

For the above stated reasons, the Court DENIES the motion for summary judgment/adjudication in all respects, except that it GRANTS the motion as to Jeffery's claims of disparate treatment and/or retaliation arising out of Yellow's decision to terminate him.

IT IS SO ORDERED.

ENTERED this 30th day of July, 2007.

s/RALPH R. BEISTLINE
United States District Judge

23